UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN T. VARNER,

    Plaintiff                                              Civil Action No. 04-73368

v.

                                                    HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL               U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## MEMORANDUM OPINION AND ORDER

Plaintiff Ivan T. Varner brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under Title II and Title XVIII of the Social Security Act. Both parties have filed summary judgment motions and have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. §636(c)(1).

## PROCEDURAL HISTORY

March 18, 2002, Plaintiff filed an application for DIB alleging an onset date of disability since January 22, 1999 (Tr. 45-47). After denial of his claim on July 3, 2002, Plaintiff filed a timely request for an administrative hearing, conducted on December 3, 2003 in Oak Park, Michigan before Administrative Law Judge (ALJ) Alfred H. Varga. Plaintiff,

represented by attorney Donald Shiffman, testified. (Tr. 225-236). Vocational Expert (VE), Raymond Dulecki also testified (Tr. 236-242). ALJ Varga found that Plaintiff was not disabled because although unable to perform any of his past relevant work, he retained the residual functional capacity (RFC) to perform a significant range of light work (Tr. 23). On July 21, 2004 the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on August 30, 2004.

## BACKGROUND FACTS

Plaintiff, born April 24, 1960, was one day short of his forty-fourth birthday when the ALJ issued his decision (Tr. 23). He has a high school education and worked transporting patients as well as performing office and desk clerking jobs (Tr. 18). Plaintiff alleges disability due to "chronic right knee pain, right shoulder pain, numbness in the right hand, and depression" (Tr. 19).

### A.     Plaintiff's Testimony

Plaintiff, right-handed, stated that he stood 5' 7" and weighed 262 pounds (Tr. 225). He testified that he graduated from high school and had worked for the past fourteen years as a patient transporter in a hospital setting (Tr. 226). He reported that his work obliged him to help lift patients (sometimes weighing over 200 lbs.) from bed to wheelchair, then transport them to another facility for tests (Tr. 226).

Plaintiff reported that in November of 1999 he sustained a right shoulder rotator cuff tear while lifting a patient (Tr. 227). He stated that since his injury, he experienced severe pain, spasms, and difficulty reaching (Tr. 227). He opined that the shoulder operation

performed sometime after his tear actually decreased his range of motion (ROM) from his pre-surgery abilities (Tr. 230). He reported that he experienced discomfort when extending his arm forward and retained a very limited ability to lift his arm (Tr. 230). He stated that he experienced periodic right hand numbness which prevented him from gripping (Tr. 231). He estimated that he could lift five to seven pounds at most (Tr. 231).

In addition to shoulder problems, Plaintiff reported that he suffered from knee pain since injuring it in a 1995 "slip and fall," testifying that standing for any significant length of time caused discomfort and swelling (Tr. 228-229). He also reported difficulty walking and that weather changes aggravated his condition (Tr. 229). He testified that he needed to elevate his bad knee two or three feet when seated to avoid swelling (Tr. 229). He stated further that he had been diagnosed with arthritis (Tr. 229).

Plaintiff testified that vocational consultants had found him temporary office work following surgery, but that he had been discharged after his employer expressed concern that he would "hurt someone" (Tr. 232). He testified that he had formerly treated with a psychiatrist who had recently moved out of state, and was currently awaiting reassignment to another physician (Tr. 233). He stated that he had been treated for manic depression, anxiety, and anger management and had been prescribed Prozac and BuSpar, but currently did not take any drugs to treat his mental condition (Tr. 233). He reported that without medication, he tended to lose patience easily, experienced poor concentration, and withdrew from other family members (Tr. 234). He attributed his stuttering to a childhood trauma, explaining that as youngster, he had witnessed his next door neighbor's murder (Tr. 234).

He stated that he stuttered only occasionally as he reached adulthood, but that it became worse after he was terminated from his last job in May of 2000 (Tr. 234). He discounted the suggestion of a vocational consultant that he could perform work as a transport driver, stating that his knee problems made driving unsafe (Tr. 235).

### B.     Medical Evidence[1]

At the end of August, 2000 Plaintiff sought voluntary admittance at the psychiatry section of William Beaumont Hospital in Royal Oak, Michigan, reporting that he experienced severe rage attacks and suicidal thoughts (Tr. 188). He expressed frustration with his home life as well as unsatisfactory results of a shoulder surgery (Tr. 188). He indicated that he had been receiving psychiatric treatment before his admittance.[2] Hospital notes indicate that Plaintiff had recently held a knife to his brother's throat and threw furniture at home (Tr.194, 206). Plaintiff exhibited mood improvement after receiving BuSpar, Serzone, Restoril, and Neurontin (Tr. 189). A discharge summary report indicates that Plaintiff appeared to be "benefitting from treatment," noting however, that Plaintiff did not comply with a daytime hospital treatment program recommended by his physicians (Tr.

---

[1]As noted by Defendant, Plaintiff challenges only the mental RFC composed by the ALJ. *Defendant's Brief* at 3. Nonetheless, the undersigned has reviewed all of Plaintiff's medical records. Records that discuss Plaintiff's physical conditions contain only one reference to his mental health - a preoperative consultation dated January 21, 1999 in which Plaintiff denied receiving psychiatric treatment (Tr. 129). Therefore, this Court will discuss Plaintiff's medical records pertaining only to his mental conditions.

[2]Plaintiff also stated at the hearing that he had treated with "Dr. Vincent" (Tr. 232). However, the transcript does not contain his psychiatrist's records.

190). Plaintiff received a "guarded" prognosis, "due to [Plaintiff's] obviously poor judgment" (Tr. 190).

In May, 2002 Prameela Baddigam, M.D., examined Plaintiff on behalf of the State of Michigan Disability Determination Services (Tr. 214-215). Dr. Baddigam noted that Plaintiff had been depressed since his January, 1999 shoulder surgery (Tr. 214). Although Plaintiff took Prozac and BuSpar, and received counseling through Christian Access Counseling Center in Southfield, Michigan, Plaintiff reported that his depression was becoming worse, not better (Tr. 214). Dr. Baddigam noted that Plaintiff stuttered (Tr. 214). She opined that Plaintiff did not appear "capable of functioning independently or appropriately, "assigning him a GAF of 40-45 (Tr. 215).[3]

In June, 2002, Rom Kriauciunas, Ph. D., performed a Mental Residual Functional Capacity Assessment of Plaintiff (Tr. 96-99). Dr. Kriauciunas found that Plaintiff's ability to understand, remember, and carry out detailed instructions, as well as his ability to maintain attention and concentration for extended periods was moderately limited (Tr. 96). He also found moderate limitations in Plaintiff's ability to interact appropriately with the general public and respond appropriately to changes in the work setting (Tr. 97-98). He concluded that Plaintiff retained the ability to perform unskilled work on a sustained basis, provided that

---

[3]A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000). A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Id.*

his job duties were limited to simple tasks (Tr. 98).

On the same date, Dr. Kriauciunas conducted a Psychiatric Review Technique (Tr. 108-121). Based on Plaintiff's medical records, he found that Plaintiff experienced bipolar syndrome with a history of episodic periods (Tr. 111). He found that Plaintiff experienced a mild restriction of daily activities, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 118). He noted that Plaintiff had experienced "one to two" episodes of decompensation (Tr. 118).

### C.     Vocational Expert Testimony

VE Raymond Dulecki classified Plaintiff's former work transporting patients as semi-skilled at the heavy exertional level (Tr. 238). He classified Plaintiff's subsequent work as a counter clerk and desk clerk respectively as light/unskilled and sedentary/unskilled (Tr. 238). He stated that based upon Plaintiff's testimony, he was unable to perform gainful employment, citing Plaintiff's alleged need to cradle his right arm with his free hand, as well as his depressive condition (Tr. 239). The ALJ posed the following question to the VE:

> "Assume for the sake of this hypothetical that we have basically the same person, same age, sex, education level, and work experience. I made a finding that a person with Mr. Varner's background could perform no greater than a light job exertionally, but that in addition to the job being light, it would afford the option of sitting or standing off and on; that with regard to the dominant right extremity he would never have to lift more than 10 lbs.; and that he would never use the right dominant extremity above chest or shoulder level; that there would be no reaching over chest or shoulder level with the dominant right extremtiy; that any job in response to this hypothetical would not be performed at any unprotected heights, require any driving, or climbing, or work around dangerous or hazardous machinery, that they would be simple and routine in nature, not requiring more than a very few steps in the completion of the assigned tasks, as well as being low in stress and having

> limited contact with the public, co-workers, and supervisors. The 10 lbs. is the limitation with regard to the dominant right extremity, and maximum with the non-dominant would never be over 20 lbs. What jobs, if any, would fall within the parameters of this hypothetical?"

(Tr. 240).

The VE replied that Plaintiff could perform 4,500 inspection, packaging, and sub-station assembly positions (Tr. 240-241). He stated that he had taken into account Plaintiff's difficulties in reaching, and performing functions with his right arm (Tr. 241). He testified further that all of the jobs that he identified were unskilled, entry level positions which could be learned on the basis of a short demonstration period (Tr. 241). He reported that his testimony was consistent with the Dictionary of Occupational Titles (DOT), with the exception of the sit/stand option, which was based on his own observations (Tr. 241-242).

## D.     The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered from "status post surgical repair of the right rotator cuff, complaints of chronic right shoulder pain, complaints of right knee pain, and a bipolar disorder," but did not experience an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 22).

ALJ Varga found that although Plaintiff could not perform any of his past relevant work, he possessed the RFC to perform a significant range of light work that involved:

> "Limitations of a sit/stand option, limited use of the dominant right arm, no work around unprotected heights, no driving, no climbing, no work around hazardous machinery, only simple and routine tasks, a low stress work environment, and limited contact with the public, co-workers and supervisors"

(Tr. 22-23).

The ALJ found Plaintiff's testimony "not fully substantiated by the objective medical evidence," pointing out that within one year of his shoulder surgery, Plaintiff was found to be "eighty percent asymptomatic" (Tr. 22). He also noted that although Plaintiff complained of knee swelling which obliged him to keep his legs elevated, his May, 2002 consultive evaluation "did not indicate significant limitations" of the lower extremities (Tr. 20). The ALJ also found that despite Plaintiff's hospitalization for a depressive disorder, he continued to care for his personal needs, drive, and retained the ability to manage his benefit funds (Tr. 21).

The ALJ found that Plaintiff possessed moderate limitations in his ability to interact with the general public, perform detailed tasks, and concentrate for extended periods (Tr. 21). He noted that during Plaintiff's May, 2002 consultive evaluation he exhibited "intact memory and concentration" and had exhibited only one episode of decompensation (Tr. 21). He concluded that Plaintiff could perform 4,500 entry-level visual inspection, packaging, and assembly positions located in southeastern Michigan (Tr. 22).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Hypothetical Question

Citing *Eiseler v. Barnhart,* 344 F.Supp.2d 1019 (E.D.Mich. 2004), Plaintiff argues that the hypothetical question did not adequately describe his mental limitations. *Plaintiff's Brief* at 11. Plaintiff also cites *Walker v. Barnhart*, 258 F. Supp 2d 293 (E.D. Mich. 2003), maintaining that limiting him to simple, unskilled work was not sufficient to acknowledge the limitations caused by his depressive disorder. *Id.* at 13.

In *Varley v. Secretary of Health & Human Services,* 820 f.2d 777, 779 (6th Cir. 1987) the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted).

The ALJ sufficiently accounted for his mental limitations regarding concentration in the hypothetical question . The court in *Eiseler* stated that

> "[c]ourts have found that hypotheticals limiting a worker to 'unskilled work' have not been sufficient to accommodate certain psychological limitations. *Newton v. Chater,* 92 F.3d 688 (8th Cir.1996), held that a reference merely to 'unskilled sedentary work' in a hypothetical question is insufficient to describe and accommodate concentration deficiencies[.]"

344 F.Supp.2d at 1029.

However, the *Eiseler* holding is inapplicable in the present case. The ALJ's hypothetical in the present case, which limited Plaintiff to "simple and routine work," imposed further restrictions on his job activities by stating that his work should not require "more than a very few steps in the completion of the assigned tasks, as well as being low in stress and having limited contact with the public, co-workers, and supervisors" (Tr. 240). Moreover, the VE stated that the same jobs could be "learned on the basis of a short demonstration," establishing that he also properly considered Plaintiff's concentrational limitations in making his finding (Tr. 241). The hypothetical limitations, which drew on the results of a June, 2002 Psychiatric Review Technique, reflected Plaintiff's moderate difficulties in maintaining social functioning and concentration (Tr. 118).

However, the ALJ's hypothetical question failed to reflect with specificity his factual determination that Plaintiff had, in part, moderate limitations in persistence and pace. In the past, this Court has recognized that moderate deficiencies in pace must also be reflected in the hypothetical question. In *Bankston v. Commissioner,* 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." Likewise, "moderate" deficiencies, which also mark the midpoint of a five-point scale, suggest substantial limitations which should be acknowledged in the hypothetical question. The fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in

concentration will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies in pace. *See, e.g., Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D. Or. 1999). Nor does the qualifier "low stress" effectively "capture the concrete consequences" of Plaintiff's limitations in pace. *Roe v. Chater,* 92 F.3d 672, 676-77 (8th Cir. 1996). Stress does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday.

However, while the Court recognizes that generally, a failure to account for pacing deficiencies constitutes reversible error, in the present case, the error was rendered harmless, since in response to the hypothetical question, the VE stated explicitly that the jobs that he cited "*avoid[ed] high speed production work,*" which accounts sufficiently for Plaintiff's deficiencies in persistence and pacing (Tr. 241).

Second, Plaintiff's claim that the ALJ erred by omitting direct acknowledgment of his depressive disorder in the hypothetical question also fails. The court in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), clarifying its earlier holding in *Howard v. Commissioner,* 276 F3d 235 (6th Cir. 2002), held that the ALJ is not required to list all of a plaintiff's Step Two impairments in the hypothetical question. *Id.* at 632, *quoting Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987).[4] *See*

---

[4] As discussed above, Plaintiff cites *Walker v. Secretary of HHS,* 258 F. Supp 2d 693 (E.D. Mich. 2003) in support of the proposition that the ALJ must include the non-exertional limitations imposed by depression. However, certain portions of *Walker* rely on an interpretation of *Howard, supra,* which the Sixth Circuit later rejected in *Webb*. For example,

*also Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), where the court rejected the argument that the ALJ must adhere to talismatic language in hypothetical questions to avoid remand. The court found that a question was sufficient provided that it properly reflected plaintiff's relevant limitations. The ALJ's hypothetical question, derived in relevant part from Plaintiff's Psychiatric Review Technique and mental RFC, meets with the requirements of *Webb*. (With the exception of Plaintiff's limitations in persistence and pace, which, the omission of which, as discussed above, was harmless error). Moreover, substantial evidence, culled from Plaintiff's consultive examination, along with his mental RFC and Psychiatric Review Technique support the ALJ's ultimate conclusion that Plaintiff could perform a range of light work properly limited in scope by his non-exertional impairments.[5]

This Court notes in closing that its conclusion upholding the ALJ's finding of non-disability is not intended to trivialize Plaintiff's legitimate impairments. However, the VE's testimony, which properly took into account all of Plaintiff's limitations as determined by the ALJ, constitutes substantial evidence that the ALJ justifiably used to support his conclusion. Based on a review of this record, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*,

---

the following section of *Walker* now stands at odds with the Sixth Circuit's more recent opinion: "As such, the Court finds that in accordance with the rule of law stated in *Howard,* the ALJ should have referenced Plaintiff's mental condition in her hypothetical question to the VE." *Walker,* 258 F. Supp 2d at 701.

[5]Plaintiff's attorney at the hearing (not his present attorney) stated that he would present treating notes from Plaintiff's treating psychiatrist to the administrative court (Tr. 236). However, Plaintiff's transcript does not contain such records.

*supra*, and should not be disturbed by this Court.

## CONCLUSION

It is therefore ordered that Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. Judgment shall be entered in favor of DEFENDANT.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 12, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 12, 2005.

S/G. Wilson
Judicial Assistant
